**NOT FOR PUBLICATION** [1]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>   MORRIS KORMAN,<br><br>          Debtor,<br><br>LUMBER MUTUAL INSURANCE CO.,<br><br>          Appellant,<br><br>          v.<br><br>MORRIS KORMAN,<br><br>          Appellee. | Civil Action No. 09-3276(FLW)<br><br><br><br>**OPINION** |

**WOLFSON, United States District Judge:**

      Appellant Lumber Mutual Insurance Company ("Creditor") appeals a final Order of the Bankruptcy Court dated May 26, 2009, which denied Creditor's Motion to Reopen Morris Korman's ("Debtor") bankruptcy case. This Court has appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). For the reasons that follow, the matter is remanded to the Bankruptcy Court.

**I.  BACKGROUND**

      Debtor sought relief under Chapter 7 for a no asset bankruptcy on January 14, 2008. Debtor was a car salesman for Richard's Imports of Freehold ("Richard's Imports"), which was insured under a policy of employee dishonesty insurance issued by Creditor. In January 2001, Richard's Imports made a claim under that policy for a loss of

$151,116.16 by employee dishonesty based on a theft committed by Debtor while employed at Richard's Imports. Debtor was prosecuted by the State of New Jersey in connection with the theft and on September 13, 2002, a civil judgment was entered by way of restitution in favor of Richard's Imports against Debtor in the amount of $151,116.16. Thereafter, Creditor paid the employee dishonesty claim made by Richard's Imports under the policy and Richard's Imports assigned the civil judgment to Creditor, which became subrogated to the rights of Richard's Imports to pursue Debtor for restitution.

In the original petition filed on January 14, 2008, Debtor failed to include Creditor among the creditors listed in the schedules to the petition. On April 7, 2008, Debtor amended Schedule F, to include "Lumbermans Insurance" as an unsecured creditor with an address of "105 Fieldcrest Avenue, Edison, New Jersey 08837" in connection with the $151,116.16 debt. However, Creditor, Lumber Mutual Insurance Co., is not related to Lumbermans Insurance and was never located at the address listed in the amended Schedule F. It is undisputed that Creditor never received notification from the Bankruptcy Court of Debtor's Chapter 7 filing. On April 22, 2008, two weeks after Debtor filed the amended Schedule F, Debtor received a discharge in bankruptcy. Debtor's bankruptcy case was closed on June 11, 2008.

The parties first appeared before the Bankruptcy Court on Creditor's Motion to Reopen the bankruptcy case on April 27, 2009. Citing the fact that Creditor was never properly served with notice of Debtor's bankruptcy and the fact that the underlying debt is non-dischargeable under 11 U.S.C. § 523 because it was incurred via embezzlement or defalcation, Creditor argued that good cause was shown to reopen the bankruptcy

proceeding. Creditor's "Brief of Law" filed May 13, 2009 at 2-3. In response to Creditor's Motion to Reopen, Debtor submitted a certification indicating that "sometime between April 2008 and June 2008" he received a telephone call from Creditor's counsel at which time Debtor informed Creditor's counsel of his bankruptcy case and gave him the name of his attorney. Korman April 9, 2009 Cert. ¶ 6. Finding that Creditor had failed to provide clear information as to when it had actual notice of Debtor's bankruptcy and why it waited until April 2009 to file the Motion to Reopen, the Bankruptcy Court adjourned the hearing to permit Creditor to file a supplemental certification addressing those issues. 1T5:22 - 6:3.[1] Subsequently, at a May 26, 2009 hearing, after considering the parties' supplemental submissions, the Bankruptcy Court denied Creditor's Motion to Reopen holding as follows:

> Movant has not met its burden of demonstrating circumstances sufficient to justify reopening the case. The original certification in support of the Motion was silent about when [Creditor] had actual notice of the filing. The supplemental certification of [Creditor's counsel] indicates that he had actual notice of the bankruptcy filing in October 2008 when he received a phone call from Debtor's Counsel.
>
> He then confirmed that information by checking Pacer on October 17, 2008. The Court does not even need to address the Debtor's certification that Movant had actual notice sooner since the search of Pacer is the key date for the Court's analysis. A review of the docket on Pacer would have provided Movant's Counsel with crucial information that the phone call from [Debtor's counsel] may not have. That being the deadline for filing complaints objecting to dischargeability. While that date had long past [sic] by October of 2008, it should have put [Creditor's counsel] on notice that there is a strict deadline for filing dischargeability complaints.

---

[1] "1T" refers to the April 27, 2009 Transcript of the hearing before the Bankruptcy Court on Debtor's Motion to Reopen.

> Had they received the original notice from the court they would have had 90 days to file a complaint. It is simply not reasonable for an attorney to think that once they had actual notice of the bankruptcy and the deadline that [Creditor] could, at its leisure, decide whether it wanted to file a complaint. And that's what the certification of [Creditor's counsel] establishes, that they proceeded leisurely.
>
> [Creditor's counsel] informed [Creditor] of the bankruptcy on October 20th; did some legal research on how to proceed, but that wasn't undertaken until November 11th. They didn't make a decision to file a Motion until February 23rd and the Motion itself was not filed until April 2nd, well over the 90 days that would have been afforded if notice had been sent on a standard basis from the BNC. That's simply not acceptable.
>
> Congress proposed strict deadlines it did on filing complaints objecting to discharge because it recognized the importance to a debtor of finality, and you can see for example, In Re: Grillo, 212 B.R. 744. This case was discharged over a year ago, closed ten months ago, and the Movant has not met its burden of establishing sufficient cause to reopen at this late date to allow them to file a complaint.
>
> The Motion will be denied with the standard Order. [2T12:23 - 14:12].[2]

It is from the May 26, 2009 Order denying the Motion to Reopen that Creditor now appeals.

## II. STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal. Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005). In particular, factual determinations reviewed on appeal should not be set aside unless found

---

[2] "2T" refers to the May 26, 2009 Transcript of the hearing before the Bankruptcy Court on Debtor's Motion to Reopen.

4

to be "clearly erroneous." See Fed. R. Bankr. P. 8013; Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995); In re Indian Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir. 1995). Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (U.S.1993). Conversely, legal conclusions from the bankruptcy court are subject to de novo or plenary review by the district court. Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997); Chemetron, 72 F.3d at 345. Mixed findings of fact and conclusions of law must be broken down, and the applicable standards--"clearly erroneous" or de novo--must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)). Finally, consideration of a bankruptcy court's exercise of discretion is reviewed for abuse thereof. See In re United Healthcare Sys., Inc., 396 F.3d 247, 249 (3d Cir. 2005). Accordingly, a bankruptcy court's decision not to reopen a previously closed bankruptcy proceeding is reviewed for abuse of discretion. In re Lockings, 308 Fed.Appx. 583, 584 (3d Cir. 2008) (citing Donaldson v. Bernstein, 104 F.3d at 551).

### III. DISCUSSION

Pursuant to 11 U.S.C. § 350(b), "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." It is well established that a bankruptcy court has broad discretion in deciding whether to reopen a case. In re Zinchiak, 406 F.3d 214, 223 (3d Cir. 2005). Indeed, "[a]

decision denying a motion to reopen 'is binding on review absent a clear showing that there was an abuse of discretion.'" In re Rashid, No. 04-1585, 2004 WL 2861872 * 3 (E.D.Pa. Dec. 13, 2004) (quoting In re Emmerling, 223 B.R. 860, 864 (B.A.P.2d Cir. 1997)).

On appeal, Creditor concedes that the first two grounds set forth in § 350(b) for reopening did not apply and, thus, it had to show "cause" in order to reopen the bankruptcy proceeding. Citing the fact that the Bankruptcy Court did not find that it received actual notice of Debtor's bankruptcy proceeding prior to the April 22, 2008 discharge and the fact that the Bankruptcy Court did not find that Creditor was unable to make out a *prima facie* case of nondischargeability under Sections 523(a)(2) and (4) of 11 U.S.C. § 523(a), Creditor contends that the Bankruptcy Court erred by refusing to reopen the case to determine the dischargeability of the underlying civil judgment against Debtor in the amount of $151,116.16.

More specifically, Creditor contends that the Bankruptcy Court's ruling that it was dilatory in filing its Motion to Reopen cannot support the denial where there is no finding that it "violated any statute of limitations, any time limit within the Federal Rules of Bankruptcy Procedure, or any section of the Bankruptcy Code." Creditor's Br. at 9. As evidence that the Bankruptcy Court "improperly and unfairly required [Creditor] to adhere to deadlines of which it was unaware", Creditor cites to the transcript of the Bankruptcy Court's decision in which the Court noted that

> Had they received the original notice from the court they would have had 90 days to file a complaint. It is simply not reasonable for an attorney to think that once they had actual notice of the bankruptcy and the deadline that [Creditor] could, at its leisure, decide whether it wanted to file a complaint. And that's what the

> certification of [Creditor's counsel] establishes, that they proceeded leisurely.

Creditor argues that the foregoing ruling was "wrong on several scores." First, Creditor contends that the 90-day deadline referenced by the Court applied only to those creditors that were scheduled in Debtor's bankruptcy petition. Moreover, Creditor argues, the 60-day deadline was inapplicable because it applied only to the newly impleaded creditors under the amended Schedule F, of which Creditor was never notified. Creditor contends that it was impossible for it to comply with either deadline, both of which had passed months earlier. From October 17, 2008, when counsel for Creditor consulted the bankruptcy docket, to April 2, 2009, when it filed the Motion to Reopen, Creditor argues that "no deadline, nor any circumstances implying some urgency or a need for the proverbial 'race to the courthouse' existed." Creditor's Br. at 11. Given the fact that it did not receive notice of the bankruptcy case and the relevant bar dates until those dates had passed, Creditor argues that its right to due process requires the reversal of the denial of its Motion to Reopen. According to Creditor "the court below cited neither precedent nor authority to support its naked conclusion that [Creditor's] motion to reopen was untimely. Only the court's *ipse dixit* supported the denial of reopening." Creditor's Br. at 12. Alternatively, Creditor argues that even if this Court finds that the Bankruptcy Court did not abuse its discretion in denying the Motion to Reopen, this Court should nevertheless rule that Creditor is not precluded from filing a complaint to determine the dischargeability of its debt under 11 U.S.C. § 523(a)(3)(B).[3]

---

[3] Debtor contends that this Court should decline to address Creditor's alternate argument regarding the dischargeability of the debt under § 523(a)(3)(B) because Creditor failed to raise it before the Bankruptcy Court. According to Debtor, "[c]learly [Creditor], in presenting the motion to reopen, and filing this appeal of the Bankruptcy

Pursuant to Fed.R.Bankr.P. 4007(b), a complaint, other than one filed under 11 U.S.C. § 523(c), may be filed "at any time." A complaint seeking to determine the dischargeability of a debt under § 523(c), however, must "be filed no later than 60 days after the first date set for the meeting of creditors." Fed.R.Bankr.P. 4007(c). Here, the first date set for the meeting of creditors in Debtor's bankruptcy case was February 19, 2008. Accordingly, the bankruptcy docket listed April 21, 2008 as the last day to oppose dischargeability. That deadline does not, however, apply where the debt is of a kind specified in paragraphs (2), (4), or (6) of § 523(a), and the debt was not scheduled in accordance with § 521(1), and the creditor had no notice or actual knowledge of the bankruptcy case in time to file a proof of claim and seek a timely request for determination of dischargeability. Indeed, Section 523(c)(1) states

> *Except as provided in subsection (a)(3)(B) of this section*, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), or (6) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), or (6), as the case may be, of subsection (a) of this section.

(*Emphasis added*). Subsection (a)(3)(B) of § 523 provides that

> (a) A discharge under section 727, 1141, 1228, or 1328(b) of this title does not discharge an individual debtor from any debt --
>
> . . . .

---

Court decision, believed that the motion to reopen is necessary to prosecute the anticipated, but ultimately time barred, adversary proceeding." Debtor's Br. at 9. In light of this Court's finding, infra, that remand is necessary on the Motion to Reopen, this Court need not address whether Debtor is correct that this Court may not address the argument on appeal or whether a motion to reopen is a prerequisite to a § 523(a)(3)(B) proceeding.

8

>(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to debtor, of the creditor to whom such debt is owed, in time to permit --
>
>. . . .
>
>(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

"Section 523(a)(3)(B) excepts from discharge 'intentional tort' debts that were not listed. Since section 523(c) provides that the dischargeability of these debts must be determined by the bankruptcy court and Bankruptcy Rule 4007(c) requires a complaint to be filed before the discharge is entered, section 523 (a)(3)(B) preserves the right of these creditors to litigate the dischargeability of their debts." Judd v. Wolfe, 78 F.3d 110, 114 (3d Cir. 1996). Accordingly, "if § 523(a)(3) applies to the debt, then it will not be discharged if left unscheduled." Aiello v. Klein & Radol, LLC, No. 06-6099 (AET), 2007 WL 2363818, * 3 (D.N.J. Aug. 16, 2007) (citing Judd v. Wolfe, 78 F.3d at 114).

Here, the Bankruptcy Court found that Creditor did not have notice or actual knowledge of Debtor's bankruptcy proceeding in time to file a proof of claim and timely request determination of dischargeability of the debt. Indeed, the Bankruptcy Court recognized that date had long passed by October of 2008, when Creditor's counsel confirmed the fact of Debtor's discharge in bankruptcy on Pacer. 2T13:6 - 13:16. Additionally, in light of the fact that the debt at issue stems from a civil judgment entered by way of restitution in connection with Debtor's prosecution for theft, in its moving papers before the Bankruptcy Court, Creditor argued that the debt was incurred via

embezzlement or defalcation and, thus, fit within a § 523 exception to discharge.  Yet, in denying Creditor's Motion to Reopen, the Bankruptcy Court cited the strict deadlines imposed by Congress on filing complaints objecting to discharge because of the importance to a debtor of finality.  2T:14:6 - 14:12.  To the extent that the Bankruptcy Court's decision rested on the determination that Creditor's request for dischargeability was untimely, such determination was erroneous.  Indeed, there is no time limitation for filing the complaint seeking dischargeability under § 523(a)(3)(B), because the debt was neither listed nor scheduled by Debtor.

Nevertheless, while § 523(a)(3)(B) and Rule 4007(b) do not impose any time constraints on the filing of a request for determination of dischargeability where the debt is of a kind specified in paragraphs (2), (4) or (6) of § 523(a)(3)(B), the doctrine of laches may indeed operate as a bar against reopening a case.  See Figlio v. American Management Services, Inc., 193 B.R. 420, 425 (Bankr.D.N.J. 1996) ("As a safeguard against bankruptcy cases existing in perpetuity, the doctrine or laches operates as a bar against reopening a case.") (citations omitted); see also In re Levy, 256 B.R. 563, 566 (Bankr.D.N.J. 2000) ("A recognized limitation on the granting of motions to reopen for lien avoidance is the doctrine of laches.").  But see Staffer v. Predovich, 306 F.3d 967, 972 (9th Cir. 2002) (recognizing that "the question of whether [a debtor] could successfully assert the affirmative defense of laches to [a creditor's] nondishcargeability action was an extraneous issue at the motion-to-reopen stage, and was not properly addressed prior to the filing [of] the complaint.").  Although Debtor raised laches as a defense to Creditor's Motion below, the Court finds that the Bankruptcy Court never reached the issue.  It appears from the parties' briefing on appeal, that both Debtor and

10

Creditor agree that the Bankruptcy Court never reached the issue of whether laches operated to bar the reopening of the case. Indeed, Debtor notes "[a]s the Bankruptcy Court held that Lumber Mutual did not establish 'cause' to reopen under § 350, the Laches argument was not addressed below." Debtor's Br. at 8. Similarly, Creditor argues that "[t]he court in its ruling of May 26, 2009 (T2) did not use that doctrine to support its ruling." Creditor's Br. at 13; see also Rep. Br. at 3.[4]

"Laches is an equitable defense which allows a court to dismiss an action when there exists inexcusable delay in instituting an action and prejudice to the non-moving party as a result of the delay." In re Levy, 256 B.R. at 566 (emphasis added). Even if the Bankruptcy Court's discussion of "the strict deadlines" imposed by Congress and Creditor's "leisurely conduct" can be construed as a determination of lack of diligence amounting to inexcusable delay, the Bankruptcy Court made no ruling on the issue of prejudice. Debtor argues, despite his acknowledgment that the laches argument was not addressed below (Debtor's Br. at 8), that the "requisite factual and legal findings were

---

[4] The Court notes that the Creditor's position in its briefing with regard to the Bankruptcy Court's consideration of the defense of laches is directly contrary to the "Statement of Issues to Be Decided" filed by Creditor in support of the instant appeal. The only two issues for appeal identified by Creditor therein were:

> a. Did the motion judge err by denying plaintiff's motion to reopen the bankruptcy based on the Doctrine of Laches, when Debtor was unable to demonstrate both an unreasonable delay in so moving and resultant prejudice to the Debtor?
> b. Did the motion judge err by denying Lumber Mutual's motion to reopen, on the basis of the Doctrine of Laches, given that Debtor's carelessness and error in providing an address for service of process resulted in a total denial of due process as to Lumber?

made" such that a finding of prejudice can be found in the Bankruptcy Court's citation to In re Grillo, 212 B.R. 744, 746 (Bankr. E.D. N.Y. 1997).  Debtor's reference in this regard is to the Bankruptcy Court's recognition that Congress proposed strict deadlines "on filing complaints objecting to discharge because it recognized the importance to a debtor of finality, and you can see for example, In Re: Grillo, 212 B.R. 744." 2T14:6 - 14:9.  Citing Costello v. U.S., 365 U.S. 265, 282, 81 S.Ct. 534 (1961), Creditor argues that "it is only 'prejudice to the party asserting the defense', not to the court, which is considered under the doctrine . . . . And reopening the bankruptcy case would have been necessary (even if Lumber's motion was filed in October or November 2008), as a result of the debtor's own misfeasance in naming the wrong creditor!"  Rep. Br. at 3. Creditor contends that Debtor has failed to identify any prejudice.  This Court finds that while a debtor's need for finality may indeed constitute prejudice sufficient to support a laches defense, just as the court's need for finality, the Bankruptcy Court's vague reference in this regard simply was not sufficient to support a finding that the prejudice prong of the defense of laches was adequately addressed.

In light of this Court's determination that the Bankruptcy Court made no ruling on the defense of laches, but, rather, rested the denial of Creditor's Motion to Reopen on the erroneous conclusion that Creditor had failed to show cause to reopen based on the untimeliness of its filing, this Court finds that the Bankruptcy Court abused its discretion. See Republic of the Philippines v. Pimentel, 128 S.Ct. 2180, 2189, 171 L.Ed.2d 131 (noting that "a court 'by definition abuses its discretion when it makes an error of law.'") (quoting Koon v. United States, 518 U.S. 81, 99-100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).  Absent the application of the doctrine of laches, there is simply no legal support

for a finding that unreasonable delay in filing a motion to reopen upon notice of a debtor's bankruptcy proceeding warrants denial of a motion to reopen where the underlying adversary complaint is otherwise timely under § 523(a)(3)(B) and Rule 4007(b). Accordingly, the Bankruptcy Court's Order of May 26, 2009 will be vacated and the case remanded for proceedings consistent with this Opinion.

## IV.  CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Order entered on May 26, 2009 is vacated and the case remanded.

    /s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: February 26, 2010